IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| IN RE:  CONSTELLATION ENERGY GROUP, INC. SECURITIES LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MASTER FILE NO.:<br>08-CV-2854-CCB |

**DEFENDANTS' REPLY TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

James P. Gillespie, P.C. (*pro hac vice*)
Brant W. Bishop, P.C. (Bar No. 24829)
Jeffrey G. Landis (Bar. No. 17554)
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000
(202) 879-5200 (facsimile)
james.gillespie@kirkland.com
brant.bishop@kirkland.com
jeffrey.landis@kirkland.com

*Counsel for Constellation Energy Group, Inc.*

Robert J. Mathias (Bar No. 00253)
James D. Mathias (Bar No. 06311)
David Clarke, Jr. (Bar No. 02177)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4000
(410) 580-3000 (facsimile)
robert.mathias@dlapiper.com
james.mathias@dlapiper.com
david.clarke@dlapiper.com

*Counsel for the Individual Defendants*

Michael K. Isenman (Bar No. 15396)
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 346-4000 (Phone)
(202) 346-4444 (Fax)
misenman@goodwinprocter.com

Mark Holland (*pro hac vice*)
Mary K. Dulka (*pro hac vice*)
Catalina E. Azuero (*pro hac vice*)
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 813-8800 (Phone)
(212) 355-3333 (Fax)
mholland@goodwinprocter.com
mdulka@goodwinprocter.com
cazuero@goodwinprocter.com

*Counsel for the Underwriter Defendants*

The two cases Plaintiffs cite in their Notice of Supplemental Authority, *Citiline Holdings, Inc. v. iStar Financial Inc.* (No. 08 Civ. 3612(RJS), 2010 WL 1172647 (S.D.N.Y. Mar. 26, 2010)), and *Jones v. Corus Bankshares, Inc.* (No. 09 C 1538, 2010 WL 1338070 (N.D. Ill. Apr. 6, 2010)), are easily distinguishable from the instant case, and actually bolster Defendants' arguments in support of their Motion to Dismiss. In both cases, the plaintiffs proffered specific facts to show that the defendants knew, or should have known that the statements they were making were false and misleading. In contrast, here, Plaintiffs have offered only unsubstantiated, irrational allegations in support of their claims, which amount to nothing more than claims for "fraud by hindsight," which are not actionable under the securities laws. In that regard, this case has less in common with the *Citiline* and *Jones* cases, and more in common with three other recently decided cases dismissing securities fraud claims: *Slayton v. American Express Co.* (No. 08-5442-cv, 2010 WL 1960019 (2nd Cir. May 18, 2010)), *Epirus Capital Management, LLC v. Citigroup Inc.* (No. 09 Civ. 2594(SHS), 2010 WL 1779348 (S.D.N.Y. Apr. 28, 2010)), and *In re Century Aluminum Co. Sec. Lit.* (Nos. C 09-1001 SI, C 09-1205 SI, C 09-1103 SI, C 09-1162 SI, 2010 WL 1729426 (N.D. Cal. Apr. 27, 2010)).

***Citiline Holdings, Inc. v. iStar Financial, Inc.*, No. 08 Civ. 3612(RJS), 2010 WL 1172647 (S.D.N.Y. Mar. 26, 2010)**

In *Citiline Holdings*, plaintiffs alleged that a registration statement filed for a secondary stock offering failed to disclose known, massive losses. In response, defendants argued that the alleged misstatements were immaterial since broad trends of deteriorating financial performance had been disclosed to the market at large, thereby satisfying Defendant's disclosure requirements. *Id*. at *6-7. The *Citiline Holdings* court, however, was unwilling to make a determination as a matter of law on a motion to dismiss that the general market decline, in fact, placed plaintiffs on notice of defendants' declining fortunes where the defendants had not directly disclosed information

1

concerning the known declining fortunes. The court ruled that plaintiffs satisfied the heightened pleading requirements of Rule 9(b) because the complaint alleged facts indicating that the defendants made very positive statements about the company's portfolio strength when the defendants were aware that the portfolio was suffering serious losses. *Id.* at *7.

By contrast, Plaintiffs here have not alleged any facts giving rise to any inference that the Defendants discovered the collateral downgrade calculation errors before late July 2008, several weeks after the June Debenture Offering. Unlike in *Citiline Holdings*, then, there is no factual support for the allegation that Defendants knew its collateral downgrade information was in error. Plaintiffs' suggestion that the Defendants must have known of the error prior to July 2008, is supported only by supposition and conjecture. It is this absence of the kind of facts that were alleged in *Citiline Holdings* that requires dismissal here because scienter has not been pled sufficiently.

***Jones v. Corus Bankshares, Inc.*, No. 09 C 1538, 2010 WL 1338070 (N.D. Ill. Apr. 6, 2010)**

Plaintiffs cite to *Jones* for additional support for the uncontroversial and undisputed proposition that officers of a company can be assumed to know facts about that company's core operations. In *Jones* the plaintiff had "alleged specific, concrete reasons for his contention that Corus should have known" that its public statements regarding its financial health and "the adequacy of its reserves were misleading." *Id*. at *4. Specifically, the *Jones* court held that the defendants had clear indications of a rapidly degrading lending environment, including sky-rocketing construction costs, increased loan defaults, and a crashing real estate market.

Knowledge of an obviously degrading real estate market and lending environment is easily distinguishable from an internal calculation error that has not been discovered. The mere fact that

2

the collateral requirements may have been important to Constellation, does not suggest that its senior managers and officers were aware of a technical error in the complex collateral requirements calculation. Nor are there any facts suggesting that Lehman Brothers was so critical to Constellation's core operations, or that Constellation's management was so clairvoyant that they must have known about Constellation's alleged exposure to Lehman, its impending bankruptcy, and the effects Lehman's bankruptcy would have on Constellation's stock price. *(See* Reply Mem. of Law in Supp. of Constellation Energy Group, Inc.'s Mot. to Dismiss at 5.)

While the supplemental authorities Plaintiffs cite are inapposite, three recent cases dismissing securities fraud claims, *Slayton*, *Epirus Capital Management*, and *In re Century Aluminum Company,* further bolster Constellations' position that Plaintiffs' arguments, stripped of their unsubstantiated allegations, are essentially claims for "fraud by hindsight," most of which are related to non-actionable forward looking statements. In each case, the court analyzed claims of securities fraud analogous to those raised by Plaintiffs here, and granted or affirmed dismissal while rejecting many of the same arguments Plaintiffs make in this case.

*Slayton v. American Express Co.*, **No. 08-5442-cv, 2010 WL 1960019 (2nd Cir. May 18, 2010)**

In affirming the dismissal of plaintiffs' securities fraud claims in *Slayton* (attached as Exhibit 1), the Second Circuit held that American Express's allegedly misleading statements were actually forward looking statements protected by the PSLRA's safe harbor provision. 2010 WL 1960019, at *1. That safe harbor provision applies to forward looking statements that are either accompanied by meaningful cautionary language, immaterial, or made without actual knowledge that they were false. *Id*. at *5 ("The safe harbor is written in the disjunctive; that is, a defendant is not liable if the forward-looking statement is identified and accompanied by meaningful cautionary

3

language *or* is immaterial *or* the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading."). Therefore, though American Express was "not entitled to safe harbor protection under the meaningful cautionary language prong of the safe harbor . . . because their cautionary language [was] vague," the Second Circuit determined that the statements at issue were "protected by the actual knowledge prong of the safe harbor because the plaintiffs did not plead facts demonstrating that the statement was made 'with actual knowledge . . . that the statement was false or misleading . . . .'" *Id*. at *1 (quoting PSLRA, 15 U.S.C. § 78u-5(c)). The *Slayton* court further held that "the scienter requirement for forward-looking statements is stricter than for statements of current fact. Whereas liability for the latter requires a showing of either knowing falsity or recklessness, liability for the former attaches only upon proof of knowing falsity." *Id*. at *12 (internal quotation marks omitted).

Defendants' allegedly misleading statements at issue here regarding Constellation Energy's financial projections, business outlook, and collateral downgrade estimates are likewise protected by the PSLRA's safe harbor since Plaintiffs have failed to allege any facts indicating that, at the time these statements were made, Defendants had actual knowledge of their falsity. *(See* Reply Mem. of Law in Supp. of Constellation Energy Group, Inc.'s Mot. to Dismiss at 17-20.)

***Epirus Capital Management, LLC v. Citigroup Inc.*, No. 09 Civ. 2594(SHS), 2010 WL 1779348 (S.D.N.Y. Apr. 28, 2010)**

*Epirus Capital Management* (attached as Exhibit 2) is yet another example of a federal court rejecting an attempt to use market losses related to the general financial downturn in 2007-2009 as a vehicle for securities fraud claims. In *Epirus*, the plaintiffs alleged that defendants made material misrepresentations and omissions in the sale of a certain Collateralized Debt Obligation ("CDO") by not disclosing that part of the CDO's assets were comprised of "unsold 'detritus'" from

Citigroup's "warehouse," and by overstating the quality of the assets encompassed in the CDO. *Id.* at *3. In dismissing the claims, the court held that "Plaintiffs essentially plead 'fraud by hindsight,'" since defendants had in fact disclosed the nature of the CDO's investments, even though those investments turned out not to be as successful as the parties might have hoped. *Id. at *5.* The court observed that, "[w]hile great clairvoyance may have predicted the upcoming market difficulties, failure to make such predictions does not constitute fraud." *Id.* Additionally, the court held that plaintiffs failed to allege adequately a strong inference of scienter, since they had not alleged "that the defendants engaged in conduct that was 'highly unreasonable' or conduct that represented an 'extreme departure' from the standards of ordinary care to the extent that the danger was either known to the defendants or so obvious that the defendants must have been aware of it." *Id.* at *6 ("Essentially, plaintiffs simply disagree with defendants' valuation methods, which does not equate to alleging fraud."). The court's analysis in *Epirus* applies with equal force here, where Plaintiffs' claims are based on the market losses suffered during the worldwide financial crisis in 2008.

***In re Century Aluminum Co. Sec. Lit.*, Nos. C 09-1001 SI, C 09-1205 SI, C 09-1103 SI, C 09-1162 SI, 2010 WL 1729426 (N.D. Cal. Apr. 27, 2010)**

In *In re Century Aluminum Company* (attached as Exhibit 3), the Northern District of California dismissed plaintiffs' Securities and Exchange Act claims related to allegedly fraudulent errors in Century's financial statements. While Century did issue a restatement on March 2, 2009, stating that its "previously issued financial statements for the nine months ended September 30, 2008 . . . . should no longer be relied upon as a result of an error in the interim consolidated statement of cash flows[,]" that error did not have any affect on Century's total cash flow or its balance sheet, income statement, or statement of shareholder equity. *Id*. at *2. In dismissing all claims, Judge Illston held that the "[t]he scienter allegations are insufficient for a number of

5


reasons." *Id*. at *6. First, "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter," nor does "the signing of quarterly certifications of financial statements mandated by the Sarbanes-Oxley Act . . . support an inference of scienter." *Id*. (internal quotation marks and citations omitted). Second, the magnitude of the reporting error and the fact that it was in the company's financial statements, without more to explain why the error should have been obvious to management, failed to "support the inference that defendants knew about the accounting error." *Id*. at *7.

Similarly, here, while Constellation did restate its collateral downgrade obligations in August 2008, Plaintiffs have proffered no specific facts to support the allegation that Constellation's management was aware of the error prior to its disclosure. And unlike the error in *In re Century*, the collateral downgrade error had no affect on Constellation's financial statements or cash flow.

Dated: May 25, 2010                                                     Respectfully Submitted,


     /s/  James P. Gillespie                                  /s/  Michael K. Isenman
James P. Gillespie, P.C. * (*pro hac vice*)              Michael K. Isenman (Bar No. 15396)
Brant W. Bishop, P.C. (Bar No. 24829)                    Goodwin Procter LLP
Jeffrey G. Landis (Bar. No. 17554)                       901 New York Avenue NW
Kirkland & Ellis LLP                                     Washington, DC 20001
655 Fifteenth Street, N.W.                               (202) 346-4000 (Phone)
Washington, D.C. 20005                                   (202) 346-4444 (Fax)
(202) 879 5000                                           misenman@goodwinprocter.com
(202) 879 5200 (facsimile)
james.gillespie@kirkland.com                             Mark Holland (*pro hac vice*)
brant.bishop@kirkland.com                                Mary K. Dulka (*pro hac vice*)
jeffrey.landis@kirkland.com                              Catalina E. Azuero (*pro hac vice*)
                                                         Goodwin Procter LLP
*Counsel for Constellation Energy Group, Inc.*           The New York Times Building
                                                         620 Eighth Avenue
                                                         New York, NY 10018-1405
     /s/  Robert J. Mathias                    (212) 813-8800 (Phone)
Robert J. Mathias (Bar No. 00253)                        (212) 355-3333 (Fax)
James D. Mathias (Bar No. 06311)                         mholland@goodwinprocter.com
David Clarke, Jr. (Bar No. 02177)                        mdulka@goodwinprocter.com

6

DLA Piper US LLP  
6225 Smith Avenue  
Baltimore, Maryland 21209  
(410) 580-4000  
(410) 580-3000 (facsimile)  
robert.mathias@dlapiper.com  
james.mathias@dlapiper.com  
david.clarke@dlapiper.com  

*Counsel for the Individual Defendants*

cazuero@goodwinprocter.com

*Counsel for the Underwriter Defendants*